GARROW *vs.* CARPENTER and HANRICK, admrs.

1. Where a judgment at law has been superseded by the order of a Chancellor, granting an injunction; and on hearing, the injunction is dissolved, and the bill filed to obtain it, dismissed—an appeal taken from the decree, dissolving the injunction, and the execution of the usual bond, do not revive and continue the injunction, so as to supersede the execution at law.

2. Where, in such case, after the dissolution of an injunction, and while the question on appeal, is pending, execution is taken out on the judgment at law, and run against the defendant—this Court will not, on petition, award a supersedeas.

This was a petition, filed in this Court, by Garrow, praying for a supersedeas, against an execution at law. Carpenter and Hanrick, administrators of Hall, having recovered a judgment at law against Garrow, in the Circuit Court of Mobile, Garrow filed a bill in Chancery, and obtained an injunction, executing the usual bond, &c. The Chancellor on a hearing of the bill and answer, dissolved the injunction, and dismissed the bill: and Garrow, from that decree took an appeal to this Court, and gave the security required in such cases, by the statute. In the meantime, an execution was issued upon the judgment at law.

Garrow now insisted that the execution of the appeal bond, operated as a renewal of the injunction; and therefore prayed this Court to grant an order superseding the execution, until the determination of the suit, pending in this Court.

*Stewart*, for the motion.
*Gordon*, and *Goldthwaite*, contra.

GARROW *vs.* CARPENTER and HANRICK, adm'rs.

SAFFOLD, J.—Garrow, being appellant in this Court, from a decree in Chancery, rendered in the Circuit Court of Mobile, in favor of the appellees, presents, by petition, an incidental question, for our consideration.

From the petition it appears, that the appellees having obtained a judgment at law against Garrow, for one thousand and seven dollars, he exhibited his bill, and obtained an injunction staying execution on the judgment, on giving bond and security, and releasing errors, as usual in such cases. After the defendants to the bill had made answer to the same, the Court, on the hearing of the cause, ordered and decreed a dissolution of the injunction, and dismissed the bill. From which decree Garrow took an appeal to this Court, on giving the usual bond and security, to pay and satisfy such judgment or decree as this Court shall render in the premises. After which an execution was issued on the judgment at law, pursuant to a mandamus from the Circuit Court, commanding the clerk to issue it.

The petition further states, that the judgment is in favor of Carpenter and Hanrick, as administrators of Hall's estate, which is insolvent, and can not be settled, and distribution made among the creditors, until the appeal in this Court shall have been finally determined, so that no injury can result to the estate, from a delay of the execution. He, therefore, prays from this Court a supersedeas, to stay all further proceedings, on the judgment and execution aforesaid, until a final decision shall be had on the appeal.

Neither the fact, that Carpenter and Hanrick obtained the judgment at law, as administrators of an

4 s & p. 43

unsettled estate, or any other circumstance connected with the case, is deemed sufficient to distinguish it from others, that often occur.

The simple questions raised by the petition, are— 1st. After the dissolution of an injunction and dismissal of the bill, has an appeal from the decree, on the terms prescribed by statute, the effect to revive and continue the injunction? 2d. If it has not, of itself, is it competent and proper for this Court, to award a supersedeas of the execution at law, on the grounds assumed by the petitioner?

The statute authorises an appeal from any final judgment or decree of any Circuit Court, upon the appellant's entering into bond and security, "for prosecuting the same, with effect, or performing the judgment, sentence or decree, which the Supreme Court shall pass or make thereon," provided the cause be decided against him.[a] It is clear, that the appeal bond thus required, would not bind the security, for the amount of the judgment, enjoined, in the event of an affirmance of the decree; nor can the appeal have the effect to discharge the security, in the injunction bond.

The only power which Chancery can exercise over a judgment, is to perpetuate the injunction, in whole or in part; or to dissolve it altogether: it can render no decree for the debt, or any part of it; nor for damages on the judgment, in the event of an affirmance of the decree. The former is not subject to legal revision, either for reversal or affirmance; consequently, the appeal bond can only bind the security for the costs in Chancery, if decreed against the appellant.

[a] Toul. Dig 167

GARROW *vs.* CARPENTER and HANRICK, adm'rs.

But, it is insisted, that the injunction bond sufficiently insures the ultimate payment of the judgment at law, if not relieved against: also, that, by statute, "whenever an injunction shall be dissolved, damages, after the rate of six per cent., shall be added to the amount: *provided*, the Court shall be of opinion, that the injunction was obtained for delay."[a] [aToul. Dig 491]

As respects the six per cent damages, it is sufficient to say, whenever such may be decreed, they would become identified with the judgment at law, as a part thereof, and the security for the injunction, would be no less bound for the damages, than for the original amount of the judgment and interest thereon. As to the payment, though security has been given, it was entered into with reference to the decree of the Circuit Court, either dissolving or perpetuating the injunction; after the dissolution has been decreed, if the effect of the appeal would be to revive the judgment, the applicant ought from analogy to other cases, to have been required to give new security for the debt thereby farther enjoined. Had this been done, then, according to the principle recognized by this Court, in the case of *Winston, et al.* vs. *Rives*,[b] the security in the injunction bond would [bSee ante. of this vol.] have been discharged, and the subsequent responsibility have rested on the new security taken on the appeal. Without any security, it would not be contended, the appeal could have been granted, or that a writ of error would have operated as a supersedeas.[c]  Then can it be supposed, for a moment, that [cToul.Dig. 482.] the Legislature intended that a bond for a nominal amount, one to secure the costs in Chancery, should operate as a supersedeas of the judgment, for any

amount, however large. Such a course would not only endanger the debt, from the possible insolvency of the former security, during the revived existence of the injunction, but also produce great injustice to them by protracting the period of their responsibility, without their consent.

Our statutes only authorise an appeal or writ of error on final judgments or decrees ; we have often ruled, that a decree dissolving an injunction, before the final disposition of the bill, was in its nature interlocutory, and not subject to an appeal or writ of error : can the circumstance of the dissolution, and the dismissal of the bill, at the same time, vary the case? Many authorities, both English and American, have been cited and commented on by the counsel for the petitioner, to prove, that an appeal from a decree in Chancery, on bond and security given, has the effect to suspend the operation of the decree, as in case of an appeal or writ of error from a judgment at law.[a] That such is the practice according to the law and rules of Court, in England, and many of the States of the Union, including Alabama, in respect to the debt, duty or other matter directly and substantially decreed, there can be no doubt: but is the dissolution of an injunction to be viewed in that light?

[a] Eden. on Injuncti'ns 229; 14Ve. 585; 15 ib. 182; 18 ib. 452-3; J's Ch. R. 66, 160.

In *Green* vs. *Winter*,[b] it was held, that an appeal in the first instance, stays all proceedings on the matter appealed from; and if the party wishes to proceed, notwithstanding the appeal, he must apply to the Chancellor for leave ; and to give or refuse it, is a matter of discretion, according to the circumstances. The opinion of the Chancellor further remark-

[b] 1 Johns. Ch. R. 77.

ed, that the rule now in England, is, that an appeal does not stay proceedings, unless by the special order of the House of Lords; that according to the more ancient practice there, it had that effect, unless otherwise ordered; that he considered the practice in New York to have been according to the former practice in the English Chancery; and that it was so established by several rules adopted by that Court; by one of which it was expressed, that an appeal should prevent the issuance of process upon the decree. It was there also said, that the difference between the English practice and that of New York, was, that by the former, the party must apply for an order to stay the proceedings; but in the latter, the adversary must apply for leave to proceed. It will be observed, however, that the practice in the Courts referred to, is governed by rules of their own adoption, which are different from any we have, or are competent to declare; our statutes have regulated the right, also, the effect of appeals and writs of error. But what is most material to be noticed, is, that the case of *Green* vs. *Winter*, was an original bill for an account and settlement against a trustee; such was the object of the decree appealed from, and the Chancellor considered it a decree from which an appeal could be taken. From this it sufficiently appears, that that case only maintains the principle, that an appeal lies from a decree rendered in an original bill, and when legally prosecuted, it suspends the execution of such decree; that such is the correct practice, under our law, also, I have no doubt. But the question is essentially different, whether an appeal from a decree dismissing an injunction bill

and dissolving the injunction, can revive the injunction.

One case, it is true, has been cited on the part of the petitioner, which if considered sound law, would be an authority in his favor. That is the case of *Turner* vs. *Scott, and another*,[a] where the Court of appeals of Virginia, held, that a dissolved injunction was revived by an appeal taken in the Court of Chancery; and that it was improper in the appellee, to take out an execution, so long as the appeal was depending. The force of that decision, however, is much weakened from the circumstance, that it is irreconcilable with the principles of previous decisions of the same Court; that no authorities appear to have been cited by the counsel or the Court; and that it seems not to have been argued or solemnly considered.

In the previous case of *Epps* vs. *Thurman*,[b] an injunction to a judgment at law had been dissolved, and the bill dismissed. From this decree the Court of Chancery allowed Epps, the complainant, to appeal, on his executing a bond, in the penalty of two hundred dollars, with one Jordan as his security; the condition of the appeal bond was, that the appellant should prosecute the said appeal with effect, or should perform the same, and well and truly pay all such damages and costs as should be awarded against him, by the Court of Appeals, in case the said decree should be affirmed. A rule having been granted against the appellant, to show cause, why he should not give other security for the payment of the judgment enjoined, the Court of Appeals referred to the statute prescribing the terms on which appeals were

[a] 5 Rand. 332.

[b] 4 Ib. 384.

authorised to be granted; shewing that bond was required, in a reasonable penalty, with condition to satisfy and pay the amount recovered in the Court appealed from, and all costs, and to perform, in all things, the said decree, or final order, in case the same should be affirmed. Under that statute, the authority to take bond, on appeal, for the amount of the judgment enjoined, was at least equal to the authority of our statute. The Court of Virginia said, "the bond thus to be given, is to have respect to what the appellant was bound to do, or what was recovered from him by the decree of the Court appealed from." Further, they said, "in the case before us, there was nothing in the decree of the Chancellor, which bound the appellant to pay the judgment at law; there was nothing recovered from him but *costs.* The appellant had a right to appeal, on the terms which are prescribed by law." This case was argued and appears to have been maturely considered by the Virginia Court.

A similar principle was recognised in another case, in the same Court—*M'Kay* vs. *Hite's ex'ors.*[a] There, the question was, whether a party appealing from an order, dissolving an injunction, was bound to give security for the payment of the debt, as on the grant of an original injunction? The Court of Appeals said, that question had been solemnly considered, by the Court, and it had been decided that such an appeal must be allowed, on the appellant giving security merely to perform the decree of the inferior Court, and to pay costs and damages awarded there, if the decree should be affirmed.

These are the principles which are considered irre-

a 4 Rand. 564

concileable with the doctrine, that an appeal from a decree, dissolving an injunction and dismissing the bill, on giving such bond as is required by the statute of Virginia or this State, is entitled to the effect of a supersedeas of the judgment, which had been enjoined.

If the Virginia Court considered the principles of these decisions, consistent, (which is doubtful,) this Court can not so regard them.

Several cases decided in New York, are more decisive and satisfactory on this point. In *Hoyt* vs. *Gelston*,[a] the Supreme Court held, that an injunction could not be revived, by an appeal from a decree dissolving it. In explaining the principles of that decision, the Court says—" By the present rules in the Court of Chancery, certain masters, designated by the Chancellor, are authorised to grant injunctions, and which are binding until dissolved by him." That, " in the case before them the injunction had been dissolved, from which order there was an appeal; and it is now urged that this appeal suspends all proceedings in this Court, as much as if the injunction was still in force. To give such effect to an appeal from an order dissolving an injunction, would be very mischievous in practice, and serve as a great engine of delay. We must consider the case now in this Court, as if no injunction had ever issued," &c. " It is enough for us, that there is no existing injunction."

The Court, in the same case, admitted, that an appeal would lie, by the statutes of that State, from a decree dissolving an injunction; or even from a refusal to grant one, on the first application; but that

[a] 13 Johns. 139

the appeal could not, in either case, tie up the proceedings at law.

Under our statute, authorising appeals, only from final judgments or decrees, this Court has often held that an appeal will not lie, from a decree which merely dissolves the injunction; but, according to the opinion of the Court of *New York*, if the right of appeal be admitted, it can not suspend the proceedings at law, by reviving the injunction.

The case of *Wood* vs. *Dwight*,[a] is also fully in point. There, the question was, whether an appeal from an order dissolving an injunction, staying an execution at law, had the effect to revive the injunction?

[a] 7 Johns. C Rep. 295.

The Chancellor said—"If the injunction could be revived, by the mere act of the party, in filing an appeal, it would be giving to him, not only a power of control over the orders of the Court, but of creating an injunction."

He referred to the opinion of the Supreme Court of the United States, in *Young* vs. *Grundy*,[b] as an authority that no appeal would even lie upon an interlocutory order, dissolving an injunction. He also remarked, that whether an appeal can be sustained, is a question for the Court of errors; but supposing it can be sustained, it is impossible that a process that is duly discharged, and *functus officio*, can be revived by the mere act of the party. "How, (says he,) could this Court undertake to enforce the process, and punish contempts of it, in the very face of the order dissolving it: "when a process is once dis-

[b] 6 Craun. 51.

4 s & p.             44

charged and dead, it is gone forever; and it can never be revived, but by a new exertion of judicial power."

2. From the view taken of the first point, it is sufficiently evident that this Court does not conceive itself authorised, on the ground of the supposed illegality in its issuance, to award a supersedeas of the execntion at law; or do otherwise than deny the prayer of the petitioner.